Sweeny and Manzanet-Daniels, JJ.,
concur in a separate memorandum by Manzanet-Daniels, J., as follows: Plaintiff, Jinx-Proofs insurer, adequately disclaimed coverage based on the policy exclusion for assault and battery. I would therefore affirm the order.
It is undisputed that the event giving rise to Hendrix’s injuries and Jinx-Proofs alleged liability was an assault on the premises of the bar owned by Jinx-Proof. Hendrix instituted suit against Jinx-Proof and individuals involved in the alleged assault in December 2007. Jinx-Proof notified plaintiff of the suit on January 28, 2008. Three days later, by letter dated January 31, 2008, plaintiffs claims administrator responded:
“This company will promptly and diligently attempt to ascertain factual information to help us in establishing if this late notice has in any way handicapped our ability to investigate and defend this claim ... As soon as we can obtain the information, you will be notified of our decision.
“Furthermore, we are making this reservation of rights because your policy specifically excludes coverage for actions and proceedings to recover damages for bodily injuries arising from assault and batteries. . . . Consequently . . . QBE Insurance Company will not be defending or indemnifying you under the General Liability portion of the policy for the assault and battery allegations. Accordingly, we suggest that you consult an attorney in order to protect your interests and provide a defense for the assault and battery claim” (emphasis added).
On February 26, 2008, plaintiffs claims administrator sent another letter to its insured, stating: “[W]e are defending this matter under the Liquor Liability portion of the CGL coverage, and under strict reservation of rights for allegations of Assault and Battery. Your policy excludes coverage for assault and battery claims. . . . Therefore, should this matter proceed to verdict, any awards by the Court stemming from allegations of Assault and Battery will not be covered under your Commercial General Liability policy.”
Thereafter, upon defendants’ motion for partial summary judgment in the underlying action, the court dismissed Hendrix’s claims against Jinx-Proof for negligent hiring, supervision and training, and violation of the Dram Shop Act. The order was never appealed.
Plaintiff, on November 15, 2010, commenced this action seeking a declaration that it was not obligated to defend or indemnify Jinx-Proof and Hendrix in the underlying action. The court granted plaintiffs motion for a declaration that it was not obligated to defend or indemnify Hendrix and Jinx-Proof, find *512 ing that “the underlying incident . . . falls within the assault and battery exclusion of the insurance policy” and that the January 31, 2008 and February 26, 2008 letters served as effective written notices of disclaimer.
I would affirm. The disclaimers, issued three days and one month after receipt of notice from the insured, were timely. Moreover, the letters, taken individually and collectively, apprised the insured in no uncertain terms that coverage was barred by the assault and battery exclusion contained in the policy.[3] Although “reservation of rights” language may have appeared in the letters, the letters clearly state that “QBE Insurance Company will not be defending or indemnifying you under the General Liability portion of the policy for the assault and battery allegations,” and “should this matter proceed to verdict, any awards by the Court stemming from allegations of Assault and Battery will not be covered under your Commercial General Liability policy.” Such statements cannot be construed by a reasonable person as anything other than a disclaimer of coverage on the ground of the exclusion for assault and battery. Notwithstanding the allegedly “contradictory” language, the letters “specifically disclaimed coverage and sufficiently informed the defendants [of the basis for] the disclaimer” (see Blue Ridge Ins. Co. v Jiminez, 7 AD3d 652, 653 [2004] [disclaimer effective notwithstanding fact that letter purported to reserve rights as well as to disclaim coverage]).[4]
Further, no reasonable person would have an expectation of *513 coverage under the circumstances. Liability policies, in accordance with public policy, indemnify persons for the unexpected and unforeseen consequences of negligent acts; they do not afford coverage for intentional acts. It is not even clear, under the circumstances of this case, whether a disclaimer was necessary, given that an intentional act would not constitute an “occurrence” within the meaning of the policy. An “occurrence” is defined as “an accident, including continuous or repeated exposure to substantially the same general or harmful conditions.” In any event, to the extent a disclaimer was necessary, the January 31, 2008 and February 26, 2008 letters sufficiently disclaimed coverage. Since no coverage exists under the policy, plaintiff is under no duty to defend or indemnify, and the order appealed from should be affirmed.

. To the extent any negligence claims survive, they, too, arose from the assault and are subject to the assault and battery exclusion (see Metalios v Tower Ins. Co. of N.Y., 77 AD3d 471 [1st Dept 2010], citing Mount Vernon Fire Ins. Co. v Creative Hous., 88 NY2d 347, 353 [1996] [assault and battery exclusion bars claims for negligence where no cause of action would exist “but for” an assault, and notwithstanding fact that a third party not employed by the owner of the establishment had perpetrated the assault]). The exclusion, by its terms, “applies regardless of the degree of culpability or intent,” and “without regard to 1. [w]hether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person; 2. [t]he alleged failure of the insured or his officers, employees, agents or servants in the hiring, supervision, retention or control of any person . . . ; 3. [t]he alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct.”

. The dissent’s discussion of informal judicial omissions misses the point. As the case relied on by the dissent notes, an informal judicial omission is a “fact[] incidentally admitted during the trial or in some other judicial proceeding” (Matter of Union Indent. Ins. Co. of N.Y., 89 NY2d 94, 103 [1996] [emphasis added], citing Prince, Richardson on Evidence § 8-219 at 529 [Far *513 rell 11th ed 1995]). Whether plaintiffs letter constituted a sufficient disclaimer is, of course, a legal question (compare Union Indem. Ins. Co., 89 NY2d at 103 [misrepresentations concerning operations and financial condition of company admissible as informal judicial admissions]; Performance Comercial Importadora E Exportadora Ltda v Sewa Intl. Fashions Pvt. Ltd., 79 AD3d 673, 673-674 [1st Dept 2010] [admission that company was agent for a parly to the litigation]).